UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANTHONY COLBERT,<br><br>　　　　　Defendant. | CASE NO. CR18-158 RSM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

## I.　INTRODUCTION

This matter is before the Court on Defendant Anthony Colbert's motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1). Dkt. #102. Defendant is currently incarcerated at Federal Correctional Institution Sheridan ("FCI Sheridan") serving a 70-month sentence for conspiring to distribute methamphetamine. He argues that he should be released early because COVID-19 poses an extraordinary and compelling threat to him in light of his age, race, health, and incarceration. After considering Defendant's motion and the remainder of the record, the Court does not find that compassionate release is appropriate and denies the motion.

## II.　BACKGROUND

On September 24, 2018, the Court accepted Defendant's plea of guilty to one count of conspiracy to distribute methamphetamine. Dkt. #38. Following the guilty plea, the Court sentenced Defendant, on February 22, 2019, to 70 months in custody, with credit for time served,

ORDER – 1

and four years of supervised release. Dkt. #78. Defendant has now served approximately 20 months of his sentence and has an anticipated release date of April 24, 2024. Dkt. #102 at 3. Defendant is currently serving his sentence at FCI Sheridan. Dkt. #103 at 3.

Housed in a correctional facility, Defendant is understandably concerned about the risk posed by COVID-19. *See* UNITED STATES CENTERS FOR DISEASE CONTROL AND PREVENTION, *COVID-19*, *FAQs for Administrators, Staff, Incarcerated People & Family Members*, *Do I Have A Greater Chance of Getting COVID-19?*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html ("People in correctional and detention facilities are at greater risk for some illnesses, such as COVID-19, because of close living arrangements with other people.") (last visited Dec. 30, 2020). Defendant, as a 50-year-old, African American male, is already at heightened risk from COVID-19. *Id.* at *People at Increased Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (identifying racial and ethnic minority groups and age as additional risk factors) (last visited Dec. 30, 2020). The risk to Defendant is perhaps even higher because he has suffered from asthma throughout his life. Dkt. #53 at ¶ 52. Defendant indicates that "asthma attacks have been more intense and frequent since he has been incarcerated." Dkt. #102 at 3. He has been prescribed an albuterol inhaler while in the custody at FCI Sheridan and includes a copy his medication's label as proof. Dkt. #102-2. Defendant further indicates that wearing a mask, as necessary to reduce the risk of contracting COVID-19, makes breathing more difficult for him. Dkt. #102 at 3.

### III.    DISCUSSION

**A. Legal Standard**

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations

ORDER – 2

omitted). Those limited circumstances were recently expanded by the First Step Act of 2018 which allows prisoners to directly petition district courts for compassionate release after exhausting administrative remedies:

> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A) (italics reflecting amendment under First Step Act). The defendant bears the burden of establishing circumstances justifying compassionate release. *Riley v. United States*, Case No. 19-cv-1522JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020).

Similarly, the Sentencing Commission policy statements specify that a district court should consider reduction of a sentence only where, "after considering the factors set forth in 18 U.S.C. § 3553(a)," "[e]xtraordinary and compelling reasons warrant the reduction," and "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." United States Sentencing Guidelines ("USSG") § 1B1.13. The Sentencing Commission's application notes indicate that extraordinary and compelling reasons may be based on, at a minimum, the medical condition of the defendant, the age of the defendant,

ORDER – 3

the family circumstances of the defendant, or, as a catch-all, for other reasons. USSG 1B1.13 cmt. n.1. The contents of the policy statement provide persuasive guidance but do not constrain the Court's discretion in determining whether extraordinary and compelling circumstances justify compassionate release. *See United States v. Posey*, Case No. 18-cr-280-RSL, 2020 WL 4599879, at *4 (W.D. Wash. Aug. 11, 2020) (noting that the guidance of the policy statement is persuasive but not binding).[1]

**B. Defendant Does Not Establish That Compassionate Release Is Appropriate**

The parties do not dispute that Defendant has satisfied his obligation to exhaust his administrative remedies and the Court therefore considers whether Defendant's health risks constitute an extraordinary and compelling circumstance warranting consideration of a reduction. Defendant's supporting argument focuses on what he characterizes as "the serious and escalating COVID-19 outbreak at [FCI Sheridan]." Dkt. #102 at 1. He points to nation-wide statistics reflecting the inmates and staff that have tested positive for COVID-19 at various BOP facilities. *Id.* at 3–4. Additionally, Defendant notes that at the time of filing three inmates and three staff have "active" cases of COVID-19. *Id.* at 4. Given BOP's alleged inability to control the spread of COVID-19 and his compromised health condition, Defendant argues that his risk of harm from COVID-19 is extraordinary and compelling circumstance and justifies a sentence reduction.

But Defendant's somewhat vague assertions do not stand up to the more convincing evidence presented by the Government. The Government indicates that it accepts CDC's

---

[1] *See also United States v. Peterson-Siler*, Case No. 15-cr-118-RAJ, 2020 WL 5106722, at *6 (W.D. Wash. Aug. 31, 2020) (policy statement provides helpful guidance, but does not constrain courts' discretion); *United States v. Wells*, Case No. 16-cr-07-RSM, 2020 WL 5118165, at *2 (W.D. Wash. Aug. 31, 2020) (concluding that the Court has discretion to consider factors outside of those listed in the policy statement); *United States v. Powers*, Case No. 15-cr-166-TSZ, 2020 WL 3605748, *2 (W.D. Wash. July 2, 2020) (noting additional factors courts have considered in the context of COVID-19-related compassionate release motions).

ORDER – 4

guidance on COVID-19 risk factors. Dkt. #103 at 7. That guidance, however, only indicates that individuals "**might be at an increased risk** for severe illness from the virus that causes COVID-19" if they suffer from moderate-to-severe asthma. UNITED STATES CENTERS FOR DISEASE CONTROL AND PREVENTION, *COVID-19*, *People at Increased Risk*, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 30, 2020) (emphasis in original). Here, Defendant does not address, much less establish, whether his asthma should be considered "moderate-to-severe" and the Government points to several reasons that Defendant's asthma may not place him at heightened risk of harm.

The Government first points to asthma care guidelines from the National Institutes of Health which categorize asthma as intermittent, mild, moderate, or severe. Dkt. #103 at 7 (citing U.S. DEPT. OF HEALTH AND HUMAN SERVICES, NATIONAL INSTITUTES OF HEALTH, NATIONAL HEART, LUNG, AND BLOOD INSTITUTE, ASTHMA CARE QUICK REFERENCE: DIAGNOSING AND MANAGING ASTHMA, https://www.nhlbi.nih.gov/files/docs/guidelines/asthma_qrg.pdf (last visited Dec. 30, 2020)). Of note, one distinction between mild and moderate asthma is the frequency of onset and whether daily use of an inhaler is necessary. *Id.* at 5. Here, Defendant's prescription specifically indicates that his inhaler is not for daily use. Dkt. #102-2. This provides strong evidence, under the applicable guidelines, that Defendant's asthma is not appropriately categorized as moderate-to-severe. Additionally, the Government provides Defendant's BOP medical records and notes that they do not reflect that Defendant has suffered from asthma attacks of increased frequency or severity. Dkt. #103 at 8; Dkt. #105.

The Government also establishes that BOP has been responsive to the threat of COVID-19 and has implemented measures to reduce the risk of COVID-19 spreading within BOP facilities, including FCI Sheridan. Dkt. #103 at 9–10; Dkt. #103-1 (attaching 181 pages

ORDER – 5

documenting efforts to address COVID-19 at FCI Sheridan). Nonetheless, those efforts cannot be 100% effective and cases of COVID-19 have occurred among FCI Sheridan's in-custody populations and staff. But the Government provides greater context for the cases that have been reported at FCI Sheridan. First, FCI Sheridan includes distinct facilities for a correctional institution, a detention center, and a prison camp and several of the cases occurred in facilities separate from the correctional facility where Defendant is housed. Dkt. #103 at 9. Additionally, in several of the cases, COVID-19 positive individuals were identified and quarantined before contact with other inmates and staff, limiting the potential for spread.

Despite these distinctions, the Court is faced with evidence that COVID-19 is spreading within FCI Sheridan and since briefing, the number of active cases has expanded to 32 inmates and ten staff. BUREAU OF PRISONS, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Dec. 30, 2020). But Defendant, electing not to file a reply, has left the Court without context in which to consider these new cases. Without context, however, the Court cannot conclude that the increase in cases at FCI Sheridan is distinct from the current, nation-wide spike in COVID-19 cases. And similarly, as COVID-19 continues to spread within our communities, releasing Defendant from custody will not eliminate the increased risk he faces from COVID-19.

Lastly, Defendant also fails to establish that, if released, he will not present a "danger to the safety of any other person or to the community." Defendant relies only on the fact that after being indicted in this case he was released on bond and did not have any violations before voluntarily reporting to BOP custody after sentencing. Dkt. #102 at 7 (noting that Defendant "has been successful in complying with terms of supervision and release"). Defendant's good behavior while released on bond is commendable, but those efforts were reflected in Defendant's sentence. And again, the Government notes that Defendant committed this crime shortly after

ORDER – 6

coming off supervised release for a different federal controlled substances conviction. Dkt. #103 at 11. Further undercutting Defendant's argument, he admitted, on June 20, 2020, to possessing a hazardous tool and received administrative discipline. Dkt. #105 at 2. Defendant does nothing to address his past history and fails to establish that he will not be a danger to the community if released. Defendant's motion for compassionate release fails on this independent basis.

## IV.     CONCLUSION

Accordingly, having reviewed Defendant's motion, supporting documentation, relevant briefing, and the remainder of the record, the Court hereby finds and ORDERS that Defendant's motion seeking compassionate release (Dkt. #102) is DENIED.

Dated this 4th day of January, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 7